IN THE UNITED STATES DISTRICT COURT
for the WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

DOES 1–7,

Plaintiffs,

v.

BOSSIER PARISH SCHOOL BOARD and
SCOTT SMITH in his official capacity as
Bossier Parish Superintendent,

Defendants.

Civil Docket No. 5:18-cv-152

CHIEF JUDGE HICKS

MAGISTRATE JUDGE HORNSBY

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' UNOPPOSED MOTION TO PROCEED USING
## PSEUDONYMS

Richard B. Katskee*
Eric Rothschild*
Alison Tanner*
AMERICANS UNITED FOR SEPARATION OF
CHURCH AND STATE
1310 L Street NW, Suite 200
Washington, DC 20005
Tel: (202) 898-0957
Fax: (202) 898-0958
katskee@au.org

William P. Quigley, La. Bar No. 07769
LOYOLA UNIVERSITY NEW ORLEANS
7214 St. Charles Avenue
Campus Box 902
New Orleans, LA 70118
(504) 861-5591
quigley@loyno.edu

*Admitted *pro hac vice*

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................. ii

Introduction .......................................................................................................... 1

Argument ............................................................................................................. 2

    I.    Plaintiffs Should Be Permitted To Proceed Using Pseudonyms. ................... 2

        A.   Plaintiffs have a substantial need for privacy protection...................... 3

            1.   Plaintiffs have a strong interest in privacy regarding their religious beliefs. ........................................................................... 3

            2.   Plaintiffs have a credible fear of retaliatory harm if their role in this lawsuit is revealed...................................................... 5

        B.   Pseudonyms will not unfairly prejudice Defendants. ......................... 14

        C.   Anonymity would serve, not hinder, the public interest in this case... 16

    II.  If Anonymity Is Denied, Plaintiffs Should Be Allowed To Choose Between Disclosing Their Identities and Withdrawing From the Case. .................... 18

Conclusion ........................................................................................................... 19

Certificate of Service............................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*Ahlquist v. City of Cranston,*
840 F. Supp. 2d 507 (D.R.I. 2012) ........................................................................ 9

*Bell v. Little Axe Independent School District,*
766 F.2d 1391 (10th Cir. 1985) ................................................................... 12, 13

*Bossier City Medical Suite, Inc. v. City of Bossier City,*
483 F. Supp. 633 (W.D. La. 1980) ................................................................... 17

*Deveney v. Board of Education,*
231 F. Supp. 2d 483 (S.D. W. Va. 2002) .......................................................... 12

*Doe v. Blue Cross & Blue Shield United of Wis.,*
112 F.3d 869 (7th Cir. 1997) ............................................................................. 1

*Doe v. Eason,*
No. 3:98-CV-2454, 1999 WL 33942103 (N.D. Tex. Aug. 4, 1999) ................. 3, 5

*Doe v. Frank,*
951 F.2d 320, 324 (11th Cir. 1992) ................................................................... 3

*Doe v. Hood,*
No. 3:16-cv-00789-CWR-FKB, 2017 WL 2408196 (S.D. Miss. June 2, 2017).. 17

*Doe v. Smith,*
429 F.3d 706 (7th Cir. 2005) ........................................................................... 19

*Doe v. Stegall,*
653 F.2d 180 (5th Cir. 1981) ..................................................................... *passim*

*Doe ex rel. Doe v. Elmbrook School District,*
658 F.3d 710 (7th Cir. 2011) ............................................................................. 1

*Doe ex rel. Doe v. Harris,*
No. 14-0802, 2014 WL 4207599 (W.D. La. Aug. 25, 2014) .......................... 3, 16

*Glassroth v. Moore,*
335 F.3d 1282 (11th Cir. 2003) ...................................................................... 11

*Kitzmiller v. Dover Area School District*,
    400 F. Supp. 2d 707 (M.D. Pa. 2005) .................................................................. 10

*Plaintiff B v. Francis*,
    631 F.3d 1310 (11th Cir. 2011) ......................................................................... 14

*Rose v. Beaumont Independent School District*,
    240 F.R.D. 264 (E.D. Tex. 2007) ....................................................................... 16

*Santa Fe Independent School District v. Doe*,
    530 U.S. 290 (2000) ............................................................................ 13, 16, 17

*Southern Methodist University Association of Women Law Students v. Wynne & Jaffe*,
    599 F.2d 707 (5th Cir. 1979) ............................................................................. 3

*Wynne v. Town of Great Falls*,
    376 F.3d 292 (4th Cir. 2004) ........................................................................... 11

**STATUTES**

LA. REV. STAT. ANN. § 17:91 ..................................................................................... 14

LA. REV. STAT. ANN. § 44:1 ....................................................................................... 16

**OTHER AUTHORITIES**

710 KEEL News, *Bossier Schools Boss Talks Protests, Prayers and More*, YOUTUBE
    (Oct. 11, 2017), http://bit.ly/2BcGHKq............................................................ 14

*Americans United Files Lawsuit Against Bossier Parish Schools*, KSLA NEWS 12
    (Feb. 7, 2018, 2:03 PM EST), http://bit.ly/2C2i2sw ........................................... 6

Benjamin P. Edwards, *When Fear Rules in Law's Place: Pseudonymous
    Litigation as a Response to Systematic Intimidation*, 20 VIRGINIA
    JOURNAL OF SOCIAL POLICY & LAW 437 (2013)......................................... *passim*

Zack Kopplin, *Religious Rants in the Classroom*, SLATE (Nov. 2, 2015),
    http://slate.me/1P6y351.............................................................................. 4, 7, 8

Mallory Simon, *What Happened When a Public School Student Sued Over
    Prayer*, CNN (Jan. 24, 2018), http://cnn.it/2DzZCAZ......................................... 8

Charles Shumaker, *Student Beaten for Prayer Suit, He Says*, CHARLESTON
    GAZETTE & DAILY MAIL (June 19, 2002), http://bit.ly/2zOfrTe ........................ 12

## INTRODUCTION

Challenges to governmental conduct under the Establishment Clause of the First Amendment often lead to powerful emotional reactions and backlash in the affected community. Those who speak up about violations, and especially those who sue to curtail those violations, often become victims of harassment, social ostracism, economic injury, and even physical violence.

This lawsuit challenges the Bossier Parish School Board and Superintendent's official sponsorship and endorsement of pervasive religious practices in the Bossier Parish School System, in violation of the Establishment Clause. Plaintiffs are parents of children attending public school in the Bossier Parish School System. They seek, among other relief, an injunction prohibiting Defendants from continuing to sponsor and endorse religious practices in the public schools. By this motion, Plaintiffs request leave to proceed using pseudonyms, limiting disclosure of their and their families' identities to Defendants' counsel (and to the Court as appropriate) under the terms of an attorneys'-eyes-only agreement.

Plaintiffs' counsel have been authorized to state that Defendants' counsel has no objection to the use of pseudonyms in this case. The reasons that the Court should grant this request are as follows.

Plaintiffs have strong reason to fear that they and their families, including their minor children—whose identities would inevitably be revealed if Plaintiffs' identities were revealed—will suffer grave harms if they are not allowed to proceed using pseudonyms. *See* Declaration of Plaintiff Doe 1 ¶¶ 5–10 (Exhibit A); Declaration

1

of Plaintiff Doe 2 ¶¶ 5–9 (Exhibit B); Declaration of Plaintiff Doe 3 ¶¶ 5–10 (Exhibit C); Declaration of Plaintiff Doe 4 ¶¶ 5–13 (Exhibit D); Declaration of Plaintiff Doe 5 ¶¶ 5–9 (Exhibit E); Declaration of Plaintiff Doe 6 ¶¶ 5–11 (Exhibit F); Declaration of Plaintiff Doe 7 ¶¶ 5–10 (Exhibit G). Plaintiffs' and their families' safety and privacy needs far outweigh any hypothetical prejudice to Defendants or any harm to the public interest—which is served, not inhibited, by allowing Plaintiffs to proceed using pseudonyms. Accordingly, the Court should grant this motion and direct the parties to prepare a proposed protective order.

## ARGUMENT

### I.     Plaintiffs Should Be Permitted To Proceed Using Pseudonyms.

The Fifth Circuit applies a multi-factor balancing test that weighs three competing interests to determine whether a plaintiff may proceed using pseudonyms: (1) the plaintiffs' demonstrated need for privacy protection; (2) fairness to the defendant; and (3) the public's right to open judicial proceedings. *See Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981). Here, Plaintiffs have substantial need for protection against public exposure of their private religious beliefs, as well as protection against harassment and increased ostracism of their minor children attending Bossier Parish's public schools. These interests greatly outweigh the minimal potential burden that their use of pseudonyms might place on Defendants during this litigation. And the public's right to open judicial proceedings will not be hindered because the public's overwhelming interest in this suit lies in ensuring that the School System is complying with its constitutional obligations to all Bossier Parish students and families, not in exposing Plaintiffs and their children to harassment.

### A. *Plaintiffs have a substantial need for privacy protection.*

In "cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity," the normal practice of publicly naming parties yields to the plaintiffs' privacy and safety interests. *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992).[1] While all three factors need not be present for a court to allow plaintiffs to proceed using pseudonyms (*see Doe ex rel. Doe v. Harris*, No. 14-0802, 2014 WL 4207599, at *2 (W.D. La. Aug. 25, 2014)), all are present here. Plaintiffs' private religious beliefs are directly implicated by the constitutional claims here and therefore would be revealed if Plaintiffs' identities were disclosed. And public disclosure would likely result in reprisals against Plaintiffs and their families, whether from Defendants or from members of the community, and social ostracism and greater religious coercion of their children in Bossier Parish schools.

### 1. **Plaintiffs have a strong interest in privacy regarding their religious beliefs.**

The need for anonymity overwhelms the presumption of disclosure when prosecution of the suit compels plaintiffs to "divulge[ ] personal information of the utmost intimacy." *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979). In *Doe v. Stegall*, the Fifth Circuit recognized that "religion is perhaps the quintessentially private matter." 653 F.2d at 186. Thus, because the challenge to the practice of the *Stegall* plaintiffs' public school

---

[1] *Frank* relies on Fifth Circuit precedent and hence is cited extensively by courts within this Circuit. *See, e.g.*, *Doe v. Eason*, No. 3:98-CV-2454, 1999 WL 33942103, at *2 n.4 (N.D. Tex. Aug. 4, 1999).

3

requiring students to recite prayers and Bible verses involved "revelations about [the plaintiffs'] personal beliefs and practices that . . . invited an opprobrium analogous to the infamy associated with criminal behavior," the court held that the protection of anonymity was warranted. *Id.*

As in *Stegall*, Plaintiffs here would have their private religious beliefs revealed as a result of prosecuting this Establishment Clause challenge to the official promotion of religion by their children's public schools: Plaintiffs must necessarily reveal how their families' religious beliefs and practices differ from those being promoted by school officials. And these revelations will similarly invite opprobrium upon Plaintiffs and their minor children. Some of Plaintiffs' children try to hide their religious identities in school because they have suffered harassment when their religious beliefs were revealed in the past. *See* Doe 1 Decl. ¶ 8; Doe 2 Decl. ¶ 8; Doe 3 Decl. ¶ 6; Doe 6 ¶ 8; Doe 7 ¶ 8. And they are not alone; in Bossier Parish schools, other students who have been identified as believers in minority faiths or no faith at all have been subject to attacks, harassment, and ostracism by their classmates. For example, members of the Fellowship of Christian Athletes student organization at Airline High School threw pocket Bibles at students who refused to accept them when asked. *See* Zack Kopplin, *Religious Rants in the Classroom*, SLATE (Nov. 2, 2015), http://slate.me/1P6y351. Plaintiffs should not have to reveal their and their families' most personal religious beliefs—and invite opprobrium upon themselves and their

children—as a price for vindicating their constitutional rights. *See Stegall*, 653 F.2d at 186.

### 2. Plaintiffs have a credible fear of retaliatory harm if their role in this lawsuit is revealed.

Plaintiffs' reasonable fear of harassment and violence also weighs heavily in favor of allowing them to proceed under pseudonyms. *Stegall*, 653 F.2d at 182 n.6, 186. The youth of the targets of potential retaliation here is a significant factor in that balance, especially because at least one of Plaintiffs' children is in elementary school. *See id*. at 186; *Doe v. Eason*, No. 3:98-CV-2454, 1999 WL 33942103, at *3 (N.D. Tex. Aug. 4, 1999) (finding that elementary-school student was especially vulnerable). In Establishment Clause cases, "the showing of possible threatened harm and serious social ostracization based upon militant religious attitudes" gives children a "special status and vulnerability" that the Fifth Circuit has recognized as especially warranting the protection of litigation under pseudonyms. *Stegall*, 653 F.2d at 186. Although Plaintiffs are not themselves minors, revealing their identities would necessarily reveal the identities of their children attending Bossier Parish schools. *See Eason*, 1999 WL 33942103, at *3 ("Revealing the Plaintiff's identity will necessarily reveal the identity of her daughter").

In *Stegall*, the Fifth Circuit held that the plaintiffs' fear of harassment was reasonable and sufficient to warrant proceeding anonymously after local residents had declared at a school-board meeting that "Satan is here, working his evil on these people filing this lawsuit" and "We have got to band together and whop this evil thing." 653 F.2d at 182 n.6. Unfortunately, this case has already spurred threats of

violent retaliation in Bossier Parish. Mere hours after the complaint was filed on February 7, the following comments were made in response to a Facebook post by local news channel KSLA News 12 sharing *Americans United Files Lawsuit Against Bossier Parish Schools*, KSLA NEWS 12 (Feb. 7, 2018, 2:03 PM EST), http://bit.ly/2C2i2sw:





*See also* Doe 3 Decl. ¶ 10; Doe 4 Decl. ¶ 10; Doe 5 Decl. ¶ 9; Doe 6 Decl. ¶ 11. And previously, in response to a local news article following Plaintiffs' counsel's letter to the Bossier Parish School Board about prayer at Benton High School's graduation ceremony—a practice challenged in this case—Plaintiff Doe 3 saw a Facebook comment threatening:



*See also* Doe 3 Decl. ¶ 10.

The heated debate over the proper role of religion in schools that this case has already provoked is likely to move from the on-line world to Bossier Parish schools themselves—as it has in the past. After the American Civil Liberties Union sent a letter to the Bossier Parish School Board on behalf of an anonymous complainant regarding prayers recited over the loudspeaker by the principal of Airline High School, signs calling the principal a "Prayer Warrior" were planted in front of the high school's flag pole, and a "pray-in" at the school drew a large crowd of community members, political leaders, and ministers to show their support for the principal's unconstitutional religious practices. *See* Kopplin, *supra*; Doe 1 Decl. ¶ 9. One preacher who spoke at the rally announced that he needed Christians with "fingers to fight, and hands to war." Kopplin, *supra*. Students who spoke to a reporter about

their disagreement with Airline High School's prayer practice insisted on anonymity because "if there was a name revealed . . . that person would probably get attacked." *Id.*

The Court should also take notice of the events surrounding *Cole v. Webster Parish School Board*, 5:17-cv-01629 (W.D. La.), also pending in this Court. Webster Parish is east of and adjacent to Bossier Parish. On December 18, 2017, as this Court is aware, Christy Cole filed a complaint on her own behalf and on behalf of her minor daughter, K.C., against the Webster Parish School Board and school officials. As in this case, Ms. Cole challenges pervasive Establishment Clause violations in her child's public school. Ms. Cole and her daughter have received extensive publicity as a result of that lawsuit, and have reported the negative community reaction to it— and to them. *See, e.g.*, Mallory Simon, *What Happened When a Public School Student Sued Over Prayer*, CNN (Jan. 28, 2018), http://cnn.it/2DzZCAZ. On her first day back to school after the lawsuit was filed, K.C. walked the halls in fear that she would be hissed at by her peers. *Id.* The Coles have been publicly urged to leave Webster Parish because of their objections to prayer in public schools. *Id.* And other members of the community have publicly threatened Ms. Cole and her daughter. *See* Declaration of Alison Tanner (Exhibit H); *see also* Doe 4 Decl. ¶¶ 9, 10. To expect a different result in Bossier Parish, when the verbal attacks have already begun on-line, would be to turn a blind eye to the reality of the situation.

The hostile public reactions here and in Webster Parish are, sadly, all too common in Establishment Clause cases: there is an alarming history of violence and

threats of violence against plaintiffs in cases like this one, giving further weight to Plaintiffs' reasonable fear here of severe retaliatory harm to their families if their identities were revealed. For example:

- Jessica Ahlquist, a high-school student who challenged a "prayer mural" in her school's auditorium, was subjected to "bullying and threats at school, on her way home from school and on-line," and was the victim of "a virtual on-line hate campaign via Facebook." *Ahlquist v. City of Cranston*, 840 F. Supp. 2d 507, 516 (D.R.I. 2012). At one point Ahlquist needed a police escort to and from school; and after her address was posted publicly on-line, Ahlquist was forced to consider transferring schools. *See* Benjamin P. Edwards, *When Fear Rules in Law's Place: Pseudonymous Litigation as a Response to Systematic Intimidation*, 20 VA. J. SOC. POL'Y & L. 437, 459–60 (2013).

- In 2011, after a San Antonio family challenged student-led prayers at the graduation ceremony of their children's public school (*Schultz v. Medina Valley Indep. Sch. Dist.*, No. 5:11-cv-00422 (W.D. Tex.)), their children received numerous on-line threats. Edwards, *supra*, at 462. One person wrote: "This Agnostic shithead needs to thank God that he graduated . . . in one piece!" Another threatened: "In my day he would have been crying out to God while being stomped by bullies." *Id.*

- Also in 2011, Damon Fowler, a then-senior at Bastrop High School in Northwestern Louisiana, contacted officials at his school to complain

about scheduled prayers at his upcoming graduation ceremony. *Id.* at 461. After school officials leaked his name as the source of the complaint, Fowler received death threats; other students boasted that they were going to "jump him"; and one of Fowler's teachers demeaned him in a local publication as a "'student who really hasn't contributed anything to graduation or to [his] classmates.'" *Id.* (alteration in original) (quoting news article).

- In 2005, parent-plaintiffs who successfully challenged the inclusion of intelligent-design creationism in a ninth-grade biology curriculum at a public high school in Pennsylvania were harassed and threatened. *See* Declaration of Richard B. Katskee ¶ 6 (Exhibit I);[2] *Kitzmiller v. Dover Area Sch. Dist.*, 400 F. Supp. 2d 707 (M.D. Pa. 2005). One couple was attacked and harassed as atheists (though they are Christian and ran their church's Vacation Bible School), and at least two plaintiffs received death threats that had to be reported to the FBI and Pennsylvania State Police. Katskee Decl. ¶ 6. Even the presiding federal district judge, the Hon. John E. Jones III, received a barrage of death threats after issuing his decision, causing the Federal Marshal Service to place special protective details on him and his family. *Id.* The plaintiffs' children were

---

[2] Katskee, who is counsel to Plaintiffs here, has been counsel to Establishment Clause plaintiffs in dozens of lawsuits, including *Kitzmiller*, and has personal knowledge of the incidents described here and in the accompanying Katskee Declaration (Exhibit I).

harassed in school and taunted with the labels "ape boy" and "monkey girl." *Id.* One child (who was Christian and from a religious family) was told in school that she "could no longer believe in evolution and still be a Christian." *Id.* Another child was challenged in her class about "why her parents were causing all this trouble." *Id.*

- A plaintiff who successfully challenged a prayer practice at meetings of a town council in *Wynne v. Town of Great Falls*, 376 F.3d 292 (4th Cir. 2004), became the target of extreme harassment and intimidation that involved, among other things, at least ten incidents when her house was vandalized, and the physical abuse, torture, and murder of her pets. Katskee Decl. ¶ 9. In one incident, the plaintiff's home was raided, her pet parrot was beheaded, and its heart was cut out. *Id.* The parrot's body was left with a note warning, "You're next!" *Id.*

- In *Glassroth v. Moore*, plaintiffs successfully challenged the placement of a Ten Commandments monument in the Alabama Judicial Building. 335 F.3d 1282 (11th Cir. 2003). A plaintiff had her law practice boycotted, her home, law office, and car vandalized, and the windows of her home shot out. Katskee Decl. ¶ 8. The plaintiff ultimately received protection from law enforcement because of threats to her and her aged, ailing parents. Likewise, lead counsel in *Glassroth* (Katskee's predecessor as Legal Director of Americans United) received a protective detail because of threats that the FBI found to be credible. *Id.*

11

- An eighteen-year-old student, Tyler Deveney, challenged his high school's inclusion of an invocation in its graduation ceremony. *Deveney v. Bd. of Educ.*, 231 F. Supp. 2d 483 (S.D. W. Va. 2002). A month later, he was beaten by a group of teenagers, one of whom said, "Oh, you hate God?" and then hit Tyler in the face. *See* Charles Shumaker, *Student Beaten for Prayer Suit, He Says*, CHARLESTON GAZETTE & DAILY MAIL (June 19, 2002), http://bit.ly/2zOfrTe.

- After plaintiffs Joan Bell and Lucille McCord brought suit to challenge a policy allowing religious meetings during school hours, the family was subject to such severe harassment that the children had to change school districts. *Bell v. Little Axe Indep. Sch. Dist.*, 766 F.2d 1391, 1398 (10th Cir. 1985). The family received death threats by phone and by mail, and other students called the children "devil-worshippers." *Id.* at 1397. One of the children was subjected to "hair pulling . . . by a school employee." *Id.* And most chillingly, the Bells' home burned down in a "suspicious" fire. *Id.*

These examples of severe retaliation (and the other examples of threats and injuries set forth in the Katskee Declaration) demonstrate the reasonableness of Plaintiffs' fears about retaliatory harm if their identities are revealed in this case—retaliation that may include harassment, ostracism in the school community, and physical violence.

Plaintiffs also fear that school personnel will expose Plaintiffs' and their children's identities if they are allowed access to that information. In other Establishment Clause cases, school personnel have attempted to "ferret out" the identities of the plaintiffs, requiring court intervention. S*ee, e.g.*, *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 294 n.1 (2000) (school officials "'apparently neither agreed with nor particularly respected'" district court's protective order, necessitating contempt warning to ensure that "'these proceedings [are] addressed on their merits, and not on the basis of intimidation or harassment of the participants'" (quoting court of appeals)); Katskee Decl. ¶ 12; *see also* Edwards, *supra*, at 461 (Morehouse Parish school officials leaked identity of student who complained about graduation prayers). And in some instances, school officials have even demeaned or attacked schoolchildren because of their connection to Establishment Clause cases. *See Bell*, 766 F.2d at 1398 (school official pulled plaintiff's child's hair); Edwards, *supra*, at 461 (Morehouse Parish teacher demeaned student in local newspaper).

Plaintiffs very much appreciate that Defendants do not oppose this motion to proceed using pseudonyms, and we do not mean to impute any bad motives to them. Rather, attacks by community members against Plaintiffs' children are a grave risk here, and in addition the School System has many, many employees who will inevitably have contact with Plaintiffs' children and may not have the same perspective as do Defendants themselves and their counsel. If Plaintiffs' identities become publicly known, it will be too late to prevent actual harm, despite the best intentions of the parties and their counsel. Thus, Plaintiffs request that the Court

issue a protective order at the outset of this case that would afford defense counsel, but not Defendants or the public, access to Plaintiffs' identities.

As the on-line comments about this case show, community members are already keen to discover the identity of Plaintiffs and to pressure them to drop this suit and leave the jurisdiction, or to do worse. *See also* Doe 3 Decl. ¶ 10; Doe 4 Decl. ¶ 10; Doe 5 Decl. ¶ 9. Plaintiffs and their children should not have to suffer the retaliatory harms already threatened and reasonably feared in order to vindicate their constitutional rights. Plaintiffs' and their children's substantial need for privacy and safety weighs strongly in favor of allowing Plaintiffs to proceed using pseudonyms.

### B. Pseudonyms will not unfairly prejudice Defendants.

While courts must consider whether "anonymity [will] pose[] a unique threat of fundamental unfairness to the defendant" (*Plaintiff B v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011)), allowing Plaintiffs to proceed under pseudonyms subject to a protective order that allows defense counsel here to conduct and make use of full discovery will not unfairly burden Defendants' ability to defend this action.

This case is a constitutional challenge to the official acts of Defendants and of the schools and school officials under their control. Each allegation is, or should be, within Defendants' knowledge, whether because it concerns Defendants' own acts or the conduct of the schools and school personnel whom they direct and oversee in accordance with their constitutional and statutory duties. *See, e.g.*, LA. REV. STAT. § 17:91. In fact, Bossier Parish school officials have already admitted to many of the allegations in Plaintiffs' complaint. *See* 710 KEEL News, *Bossier Schools Boss Talks*

*Protests, Prayers and More*, YOUTUBE (Oct. 11, 2017), http://bit.ly/2BcGHKq at 4:35 (radio interview with Superintendent Smith stating that Bossier Parish schools have amplified prayers over the loudspeakers at football games for "many, many years"); Second Am. Compl. Ex. D (Doc. No. 10-4) (e-mail from Bossier Parish teacher Carolyn Goodwin stating, "Bossier has it's [sic] problems but there are so many awesome Christians from the top down. We pray at school functions and probably break the law all the time!!"). Any allegation not already admitted to by Defendants or evident from public records is within the knowledge of school officials, who do not need to know Plaintiffs' identities to tender any legal defenses to this action.

And certainly at this stage of the litigation, Plaintiffs' identities are relevant only to establish Article III standing—i.e., to demonstrate that Plaintiffs are parents of students in Bossier Parish schools. To the extent that any information confirming Plaintiffs' allegations regarding their standing is necessary, the proposed protective order would allow Defendants' attorneys to confirm, based on discovery from Plaintiffs' or school records, that Plaintiffs are indeed the parents of children attending Bossier Parish schools with the legal right to challenge Defendants' violations of the Establishment Clause. Nothing about that inquiry requires exposing Plaintiffs and their families to risk of retaliatory harm.

Additionally, because Plaintiffs have named governmental officials solely in their official capacity and have alleged only public facts, there is no threat that the case will force public disclosure of information that Defendants have not themselves already made public and could otherwise have kept private to protect their private

15

lives and personal reputations. *Cf. Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 266–67 (E.D. Tex. 2007) (denying anonymity because defendants were school officials named in their individual capacities, whose personal fortunes and reputations were therefore at risk). The information at issue in this case is almost universally subject to Louisiana's open-records laws (*see* LA. REV. STAT. § 44:1(A)(2)(a) (defining "public records" as all records "used . . . in the conduct . . . of any business . . . performed by or under the authority of the constitution or laws of [Louisiana]")), and many of the allegations are supported by public records already obtained by Plaintiffs' counsel through their November 8, 2017, public-records request. *See* Exhibit J (Letter from Richard B. Katskee to Sonja Bailes, Public Relations Liaison, Bossier Par. Sch. Sys. (Nov. 8, 2017)). Government officials are always subject to public scrutiny, even if that sometimes means adverse publicity based on their official actions. Defendants will not be forced to disclose information publicly that they could otherwise have kept private.

### C. Anonymity would serve, not hinder, the public interest in this case.

The presumption that parties must be named in litigation is tied to the public's right to open courts. *See Harris*, 2014 WL 4207599, at *1. But "[t]he equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical." *Stegall*, 653 F.2d at 185. Rather, in cases like this one, the use of pseudonyms will "not obstruct the public's view of the issues joined or the court's performance in resolving them." *Id.* Thus, when, as here, suit is filed against a governmental entity, the public interest in open proceedings is not harmed by the plaintiffs proceeding anonymously because the public interest "pertains more

16

to [the case's] outcome than to its individual participants." *Doe v. Hood*, No. 3:16-cv-00789-CWR-FKB, 2017 WL 2408196, at *2 (S.D. Miss. June 2, 2017).

Revealing plaintiffs' identities in cases over unconstitutional religious promotion in public schools does nothing more than distract from addressing the issues "'on their merits, and not on the basis of intimidation or harassment of the participants on either side.'" *Santa Fe*, 530 U.S. at 294 n.1 (quoting from district court's order enjoining school officials and others from attempting to uncover plaintiffs' identities in violation of protective order). As in *Santa Fe*, this case involves religious practices in public schools; and the legal and factual issues do not depend on the plaintiffs' identities beyond confirming Plaintiffs' ability to assert standing as parents of students in the schools. As a result, allowing Plaintiffs to use pseudonyms will not prevent the public from fully understanding the important constitutional issues being litigated.

Additionally, allowing the litigation to go forward with pseudonyms here will serve the public interest by not deterring other victims from seeking to vindicate their constitutional rights. *See Bossier City Med. Suite, Inc. v. Bossier City*, 483 F. Supp. 633, 644 (W.D. La. 1980) ("The chilling effect of publicly airing so private a matter as the decision to terminate a pregnancy may well preclude a woman from seeking vindication of her constitutional rights in federal court."). Intimidation and harassment of plaintiffs in cases concerning government and religion "deter plaintiffs from filing and thereby impede the rule of law if pseudonyms are infrequently allowed or loosely enforced." Edwards, *supra*, at 439; *see also* Katskee Decl. ¶ 12. "[P]laintiffs

bringing separation of church and state cases regularly receive nasty, vitriolic threats," and "named plaintiffs have had their houses firebombed and burned to the ground, their children assaulted, and more." Edwards, *supra*, at 438–39. When courts refuse to allow plaintiffs in these sorts of cases to proceed under pseudonym, they "effectively turn their backs on cases they would otherwise be hearing by allowing intimidation and fear of reprisal to force plaintiffs out of court." *Id.* at 439.

Here, Plaintiffs challenge the constitutionality of their local schools' promotion of religion and of a particular faith. Fear that disclosure of their identities would result in retaliatory harassment and ostracism of themselves and their children reasonably makes Plaintiffs fear going forward with this litigation without the protection of pseudonyms—and may make them drop out of the suit entirely rather than subject their children to even greater risk of harm. *See* Doe 1 Decl. ¶ 4; Doe 2 Decl. ¶ 4; Doe 3 Decl. ¶ 4; Doe 4 Decl. ¶ 4; Doe 5 Decl. ¶¶ 4, 10; Doe 6 Decl. ¶ 4; Doe 7 Decl. ¶ 4. Disclosure would therefore chill Plaintiffs' exercise of their constitutional rights and deter other individuals from challenging unconstitutional practices—in this Court's jurisdiction and beyond. Thus, it would serve the public interest (while disserving no one) to allow this suit to go forward with Plaintiffs proceeding under pseudonyms.

## II.   If Anonymity Is Denied, Plaintiffs Should Be Allowed To Choose Between Disclosing Their Identities and Withdrawing From the Case.

While this Court should permit Plaintiffs to proceed using pseudonyms, Plaintiffs should be allowed to voluntarily withdraw from the case rather than reveal their identities—and their children's identities—if this motion is denied. Requiring

Plaintiffs to disclose their identities without giving them the option to withdraw from the case would unfairly subject them to the very risks that they seek to avoid. *See Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005) ("[I]f the judge decides that anonymous litigation is inappropriate, the plaintiff should be allowed to dismiss the suit in lieu of revealing her name.").

## CONCLUSION

Plaintiffs' and their children's need to maintain the privacy of their beliefs about religion and to avoid retaliatory harm far outweighs any potential burden on Defendants or any public interest in this case. The Court should therefore grant Plaintiffs leave to proceed anonymously.

Respectfully submitted this 1st day of March, 2018.

s/ William P. Quigley

Richard B. Katskee, D.C. Bar No. 474250*
Eric Rothschild, D.C. Bar No. 1048877* (Trial Attorney)
Alison Tanner, D.C. Bar No. 230504*
AMERICANS UNITED FOR SEPARATION OF CHURCH AND STATE
1310 L Street NW, Suite 200
Washington, DC 20005
(202) 898-0957
katskee@au.org
rothschild@au.org
tanner@au.org

William P. Quigley, La. Bar No. 07769
LOYOLA UNIVERSITY NEW ORLEANS
7214 St. Charles Avenue
Campus Box 902
New Orleans, LA 70118
(504) 861-5591
quigley@loyno.edu

19

*Counsel for Plaintiffs*

\*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2018, I presented the foregoing Memorandum in Support of Plaintiffs' Motion to Proceed Using Pseudonyms to the Clerk of the Court for filing and uploading to the CM/ECF system, and served a copy on opposing counsel via e-mail, with opposing counsel's consent.

Respectfully submitted this 1st day of March, 2018.


s/ William P. Quigley

William P. Quigley, La. Bar No. 07769
LOYOLA UNIVERSITY NEW ORLEANS
7214 St. Charles Avenue
Campus Box 902
New Orleans, LA 70118
Tel: (504) 861-5591
quigley@loyno.edu