# Exhibit I



**AMERICANS UNITED**
FOR SEPARATION OF
CHURCH AND STATE

(202) 466-3234
(202) 466-3353 (fax)
www.au.org

1310 L Street, NW
Suite 200
Washington, DC 20005

November 8, 2017

**By U.S. Mail and Email**
Jon K. Guice, Esquire
Hammonds, Sills, Adkins, & Guice, LLP
1881 Hudson Circle
Monroe, LA 71201
jguice@hamsil.com

*Re: Pervasive Church-State Violations by Bossier Parish Schools*

Dear Mr. Guice:

Since our last correspondence, Americans United has learned through news reports and additional complaints from members of the community that there is widespread official promotion of religion—specifically, Christianity—by the Bossier Parish schools. The school system serves children from a variety of religious and philosophical backgrounds. No children should ever be made to feel like second-class citizens at school because of their or their families' faith or belief. We are therefore compelled to write again to ask that the school board take immediate action to remedy serious violations of the Establishment Clause of the First Amendment to the U.S. Constitution.

In addition to graduation prayers, about which we previously wrote to you, the church-state violations that have come to our attention include: school events held in churches; prayer over the loudspeakers at sporting events; coach-led prayer; youth pastors praying with the football team; religious choir performances; endorsement of religious clubs; endorsement of Bring Your Bible to School Day; teachers proselytizing in class; promotion of creationism; and religious displays in classrooms and administrators' offices. We ask the Bossier Parish School Board to put a stop to this religious activity.

We emphasize that the Constitution's prohibition against school promotion of religion is not motivated by hostility toward religion. Rather, it is a product of the recognition that the "preservation and transmission of religious beliefs and worship is a responsibility and a choice committed to the private sphere" and that "religious beliefs and religious expression are too precious to be either proscribed or prescribed by the State." *Lee v. Weisman*, 505 U.S. 577, 589 (1992). To put it simply, parents—

not school officials—have the right to direct the religious upbringing of their children.

*Graduation Prayer*

We have received multiple complaints regarding prayer at graduation ceremonies in the school system. As you know, we first wrote to the Bossier Parish School Board on June 8, 2017, regarding the school system's inclusion of prayer at Benton High School's graduation. You responded on September 29, 2017, asserting that the graduation prayers complied with *Jones v. Clear Creek Independent School District*, 977 F.2d 963 (5th Cir. 1992), because they were delivered by students.

That decision, however, did not survive the Supreme Court's decision in *Santa Fe Independent School District v. Doe,* 530 U.S. 290 (2000), which prohibited a public high school from holding student-led, student-initiated invocations at football games. *See Does 1-7 v. Round Rock Indep. Sch. Dist.*, 540 F. Supp. 2d 735, 747–50 (W.D. Tex. 2007) (recognizing that *Santa Fe* overruled *Jones*). Indeed, federal appellate and district courts have repeatedly prohibited voluntary student-delivered prayers at school events, including at graduation ceremonies. See citations in June 8 Letter at 2 (enclosed as Exh. A).

We therefore reiterate our request that Bossier Parish schools no longer include prayers at graduation ceremonies.

*School Events in Churches*

Bossier Parish schools also regularly hold school-sponsored events in local churches—often in a church sanctuary or in a room with religious iconography. These school-sponsored events include mandatory pre-game meals for the football teams, mandatory middle-school choir concerts, middle-school graduations, and kindergarten graduations.

The Establishment Clause, however, guarantees that no governmental entity "can force [or] influence a person to go to or remain away from church against his will." *Everson v. Board of Educ.*, 330 U.S. 1, 15 (1947). Accordingly, public schools are prohibited from holding school events in religious venues. *See, e.g., Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 853–855 (7th Cir. 2012) (en banc) (prohibiting public school from holding graduations and honors ceremonies in church, because "the sheer religiosity of the space created a likelihood that high school students and their younger siblings would perceive a link between church

2

and state," and because the school district impermissibly "direct[ed] students to attend a pervasively Christian, proselytizing environment"); *Does v. Enfield Pub. Sch.*, 716 F. Supp. 2d 172, 192, 201–02 (D. Conn. 2010) (graduation ceremony in church required students "to undertake the act of entering a place of religious worship" and conveyed that the school district was "closely linked with [the church] and its religious mission"), *appeal dismissed as moot*, No. 10-2247 (2d Cir. Aug. 17, 2010); *Musgrove v. Brevard Cty. Sch. Bd.*, 608 F. Supp. 2d 1303, 1305–06 (M.D. Fla. 2005) ("[T]o hold a graduation ceremony . . . in a religious institution that has displayed a giant cross is . . . contrary to Supreme Court precedent."); *Spacco v. Bridgewater Sch. Dep't*, 722 F. Supp. 834, 842–43 (D. Mass. 1989) (prohibiting public school from placing students in classrooms leased from a church, in part because the students had to pass beneath a large cross to enter the building and were exposed to religious icons and items both outside and inside the building); *Reimann v. Fremont Cty. Joint Sch. Dist. No. 215*, Civil No. 80-4059, 1980 WL 590189 (D. Idaho May 22, 1980) (enjoining public-school graduation in church); *Lemke v. Black*, 376 F. Supp. 87, 89 (E.D. Wis. 1974) (enjoining public-school graduation in church, because "[i]t is cruel to force any individual to violate his conscience in order to participate").

Students should not be forced to choose between entering a religious building of a faith to which they do not subscribe and forgoing participation in school activities. We therefore ask that you hold all future school activities in secular venues.

*Religion in School Athletics*

There is also extensive promotion of religion within the school system's athletics programs, particularly the high-school football programs. For instance, the Benton High School football team has devotionals, which coaches sometimes attend, on the field on Wednesday nights after practice. On game day, players attend pre-game meals that are hosted by local churches, during which church members pray for the team. Once at the football stadium, youth ministers are allowed into the locker room to lead the team in pre-game prayer. Out on the field, opening prayer is delivered over the stadium's public-address system after the national anthem. And at the end of the games, football coaches lead students in prayer on the field. *See, e.g.*, Roy Lang III, *Benton Shows off Variety of Weapons in Romp vs. Wossman*, SHREVEPORT TIMES (Sept. 2, 2017), https://tinyurl.com/BentonvsWossman. We have received reports of similar religious activity in other sports, such as cheerleading, cross-country, and track. All of these activities violate the Establishment Clause.

3

As we explained in our previous letter, government officials may not take any action that communicates "endorsement of religion." *Santa Fe*, 530 U.S. at 305. Governmental bodies are also prohibited from coercing people to take part in religious exercises or otherwise imposing religion on citizens. *Lee*, 505 U.S. at 587. Because students are impressionable and their attendance at school is mandatory, courts are "particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools." *Edwards v. Aguillard*, 482 U.S. 578, 583–84 (1987).

The courts have therefore repeatedly prohibited school officials—including athletic coaches—from leading, encouraging, or participating in student prayers. *See, e.g.*, *Lee*, 505 U.S. at 587, 592 (school district must not allow clergy to lead prayer at graduation); *Santa Fe*, 530 U.S. at 315 (school district's long-established tradition of "sanctioning student-led prayer at varsity football games" unquestionably violated Establishment Clause); *School Dist. v. Schempp*, 374 U.S. 203, 222–26 (1963) (school officials violated Establishment Clause by leading students in recitation of Bible verses and the Lord's Prayer at beginning of school day); *Engel v. Vitale*, 370 U.S. 421, 430–33 (1962) (school officials forbidden to lead students in classroom prayer at beginning of school day); *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402, 406 (5th Cir. 1996) (basketball coach must not pray with students at games or practices); *Steele v. Van Buren Pub. Sch. Dist.*, 845 F.2d 1492, 1493 (8th Cir. 1988) (band teacher must not lead students in prayer before practices or rehearsals). In *Borden v. School District*, 523 F.3d 153, 177 (3d Cir. 2008), the U.S. Court of Appeals for the Third Circuit held that the Establishment Clause prohibited a high-school football coach not only from leading prayers himself but also from "taking a knee and bowing" during prayers initiated and led by students on the football team.

At Bossier, it appears that all, or most, of the religious activity is sanctioned, sponsored, and endorsed by the school and its athletic programs. But regardless, under federal law it makes no difference whether the prayers are delivered by students or outsiders such as local church members or youth pastors; all these variations at school activities have been invalidated by the courts. *See, e.g.*, *Lee*, 505 U.S. at 586–99 (prayer at school activities with invited clergy); *Santa Fe*, 530 U.S. at 302–09 (football games with student-delivered prayer); *Borden*, 523 F.3d at 177 (football games and practices with coach leading or participating in prayer); *Lassonde v. Pleasanton Unified Sch. Dist.*, 320 F.3d 979, 983–84 (9th Cir. 2003) (graduation with student-delivered prayer); *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1102–04 (9th Cir. 2000) (graduation with student-delivered prayer); *Duncanville*, 70 F.3d at 406 (basketball games and practices with coach

4

participation in prayer); *ACLU of New Jersey v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1479–80 (3d Cir. 1996) (graduation with prayer approved by student vote); *Ingebretsen ex rel. Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 279–80 (5th Cir. 1996) (assemblies, sporting events, graduation, other school events with student-delivered prayer); *Jager v. Douglas Cty. Sch. Dist.*, 862 F.2d 824, 831 (11th Cir. 1989) (football games with students, staff, and community members delivering prayer); *Steele*, 845 F.2d at 1493 (band practices and rehearsals with band-leader-led prayer); *Hall v. Bd. of Sch. Comm'rs*, 656 F.2d 999, 1000 (5th Cir. 1981) (daily student-delivered prayer over public-address system); *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 761–62 (9th Cir. 1981) (assemblies with student-delivered prayer); *Karen B. v. Treen*, 653 F.2d 897, 901–02 (5th Cir. 1981) (student-delivered prayer in classrooms), *aff'd mem.*, 455 U.S. 913 (1982). For these reasons, we ask that the school board put a stop to this religious activity in its athletic programs.

*Student-Council Meetings*

These same constitutional principles also apply to other school-sponsored extra-curricular activities, such as student-council meetings. We understand that students at Benton Middle School are asked to elect an official student-council chaplain who then opens all student-council meetings with prayer.

Student council is a school-sponsored activity. Just as school officials cannot authorize student-led prayer in the classroom or at football games, they cannot authorize the student council to deliver religious messages to fellow students. *See Collins*, 644 F.2d 759 (9th Cir. 1981) (unconstitutional to authorize student council to deliver prayer); *Goodwin v. Cross Cty. Sch. Dist. No. 7*, 394 F.Supp. 417 (E.D. Ark. 1973) (same). Accordingly, we ask that student-council meetings no longer include opening prayer, and that students not be asked to elect a chaplain.

*Religious Choir Performances*

We have also received complaints regarding the content of school choir concerts. Not only are the concerts frequently held in churches, but students are forced to sing almost exclusively Christian worship songs. Because this also violates the Establishment Clause, please ensure that future school choir concerts, as well as the school system's music curriculum as a whole, are composed of predominantly secular music.

Religious songs may be included in public-school musical performances, but only when they are chosen for secular reasons and the overall effect of the program

5

is secular. *See, e.g.*, *Bauchman v. W. High Sch.*, 132 F.3d 542, 554–56 (10th Cir. 1997); *Duncanville*, 70 F.3d at 404. A choir performance must not be a "religious ceremon[y] . . . performed . . . under the guise of 'study.'" *Florey v. Sioux Falls Sch. Dist.*, 619 F.2d 1311, 1316 (8th Cir. 1979). And songs that are essentially prayers are impermissible even when secular pieces are also performed. *See S.D. v. St. Johns Cty. Sch. Dist.*, 632 F. Supp. 2d 1085, 1100 (M.D. Fla. 2009) (elementary-school class's performance of song with "sectarian and proselytizing message" unconstitutional); *Skarin v. Woodbine Cmty. Sch. Dist.*, 204 F. Supp. 2d 1195, 1197–98 (S.D. Iowa 2002) (high-school choir's inclusion of "The Lord's Prayer" set to music unconstitutional). Moreover, students must be given the option not to participate in the singing of any religious songs without suffering any negative consequence. *See Bauchman*, 132 F.3d at 556–58.

Forcing students to sing explicitly Christian worship songs in a church sanctuary is a school-sponsored worship service not much different from what one would experience by actually going to a Sunday service. Public schools are forbidden to compel, sponsor, or endorse that activity.

*Endorsement of Religious Clubs*

Bossier Parish schools are also involved in running the Fellowship of Christian Athletes. It is our understanding that the FCA is sponsored by teachers at almost every school in the system. Teachers encourage students to join by handing out promotional pamphlets during class. At some schools, students are permitted to wear an FCA T-shirt in lieu of their school uniform for their class photos, but no other alternatives to the uniforms are permitted. And schools facilitate the sale of club apparel. *See, e.g.*, *FCA,* Benton High School, https://bentonh-bps-la.schoolloop.com/fca (last visited Nov. 7, 2017) (linking to website selling FCA apparel and stating that "items will be sent to the school").

The government cannot "utilize its public school system to aid any or all religious faiths or sects in the dissemination of their doctrines and ideals." *McCollum v. Board of Educ.*, 333 U.S. 203, 211 (1948). School employees may attend religious events in their private capacities, but they must not "lend the aura of school sponsorship to the private religious enterprise." *Chandler v. James*, 985 F. Supp. 1068, 1087 (M.D. Ala. 1997). The constitutional line is crossed when school officials facilitate a religious activity, promote it, or encourage students to attend. *See Chandler v. James*, 998 F. Supp. 1255, 1273 (M.D. Ala. 1997) (school prohibited from "encouraging . . . directly, or indirectly, a student's attendance at baccalaureate services"); *see also Verbena United Methodist Church v. Chilton Cty.*

*Bd. of Educ.*, 765 F. Supp. 704, 713–14 (M.D. Ala. 1991) (school district required to "disassociate itself completely" from privately organized baccalaureate, and to ensure that no school officials "promote, lead, or participate in the service"). Thus, in *Culbertson v. Oakridge School District No. 76*, 258 F.3d 1061, 1065 (9th Cir. 2001), for example, the U.S. Court of Appeals for the Ninth Circuit held unconstitutional "a teacher's nod of encouragement" for students to attend an after-school religious program. The court explained that having teachers distribute permission slips for a religious club overstepped "[t]he line between benevolent neutrality and endorsement." *Id.*; *see also Sease v. School Dist. of Philadelphia*, 811 F.Supp. 183, 191 (E.D. Pa. 1993) (school employee must not sponsor or direct student gospel choir); *Jabr v. Rapides Parish Sch. Bd.*, 171 F. Supp. 2d 653, 662–63 (W.D. La. 2001) (school principal violated Constitution by distributing Bibles to students).

Here, Bossier Parish schools have plainly crossed that line and are sending the unmistakable message that the FCA is an official activity that has the official approval of Bossier Parish schools and their faculty. Please take steps to ensure that Bossier Parish schools do not promote religious clubs or facilitate any of their activities.

*Endorsement of Bring Your Bible to School Day*

We understand that the school system also promotes Bring Your Bible to School Day. This year, for example, there was a banner outside the gym at Benton Middle School reminding students to bring their Bibles; and Kingston Elementary commemorated the day by allowing a student to read Bible verses over the school's public-address system.

It is straightforwardly unconstitutional for school officials to encourage students to read the Bible. *See, e.g.*, *Schempp*, 374 U.S. at 223 (prohibiting public schools from beginning each day with Bible readings); *see also, e.g.*, *Roberts v. Madigan*, 921 F.2d 1047, 1057 (10th Cir. 1990) (holding that teacher unconstitutionally endorsed religion by reading silently from Bible during class); *Jabr*, 171 F. Supp. 2d at 664 (ruling unconstitutional a school principal's distribution of Bibles to fifth graders). Students are free to bring their Bibles to school if they choose to, but the school system cannot promote or endorse Bring Your Bible to School Day.

Moreover, more than fifty years ago, the U.S. Supreme Court struck down the use of a public school's loudspeaker system for the broadcasting of prayers and the

7

reading of Bible verses. *Schempp*, 374 U.S. at 206–07, 223–26. Even though students were allowed to select their own Bible verses to read over the school's intercom system, and despite the school's policy that students could be excused from the readings on written request by their parents, the Supreme Court held that the recitations were an unconstitutional religious exercise. *Id.* at 223; *accord Santa Fe*, 530 U.S. 290 (2000); *Hall*, 656 F.2d at 1000 (striking down morning religious devotionals delivered by students over public-school loudspeaker). The violations in each of these cases are the same: the school endorsed religious activity and coercively imposed that religious activity on a captive audience of students. *See, e.g.*, *Santa Fe*, 530 U.S. at 305, 307–08, 312; *Lee*, 505 U.S. at 587. Please do not allow students to read Bible verses over the Bossier Parish schools' public address systems.

*Community Members Distributing Religious Materials on Campus*

We understand that representatives from local churches are allowed to enter Benton Middle School to invite students to religious activities and to distribute religious fliers in the hallways during school hours. This is also a serious violation.

Courts have consistently held that public schools must not permit clergy or other members of the public to present religious messages to students at school events or during the school day. *See, e.g.*, *Lee*, 505 U.S. at 577 (public schools forbidden to invite clergy to deliver prayers at graduation ceremonies); *McCollum*, 333 U.S. at 212 (public schools forbidden to let outsiders come into schools to engage in religious teaching); *Doe v. South Iron R-1 Sch. Dist.*, 498 F.3d 878 (8th Cir. 2007) (forbidding public school to allow religious group to distribute Bibles to students in school); *Doe v. Porter*, 370 F.3d 558, 562–64 (6th Cir. 2004) (striking down public school's practice of allowing Christian college's staff to conduct proselytizing Bible-study class); *Berger v. Rensselaer Cent. Sch. Corp.*, 982 F.2d 1160, 1170–71 (7th Cir. 1993) (striking down school's practice of allowing religious group to distribute Bibles to students in classrooms or auditoriums); *Nartowicz v. Clayton Cty. Sch. Dist.*, 736 F.2d 646, 649–50 (11th Cir. 1984) (forbidding school to allow churches to announce church-sponsored activities over school's public-address system). Accordingly, please prohibit these groups from communicating religious messages to students during school hours.

*Teachers Proselytizing During Class*

We have received several reports of teachers openly proselytizing to their classes. At Kingston Elementary, for example, kindergarten teacher Kimberley

8

Searcy requires her students to memorize a Christian prayer and recite it every day before lunch. A student at another school was told by a teacher that the student "needed Jesus" and needed to be saved to be a good person. We also understand that another organization has recently written to the school board regarding first-grade teacher Kelli Aiello at Legacy Elementary, who asked each of her students what they would like to pray for and then led the class in Christian prayer. *See* Nick Wooten, *Bossier 1st-Grade Teacher Praying Illegally in Class, Group Alleges*, SHREVEPORT TIMES (Oct. 30, 2017), https://tinyurl.com/LegacyElementary. All of this conduct is plainly unconstitutional.

Public-school employees simply do not have the "right to make the promotion of religion a part of their job description." *Grossman v. South Shore Pub. Sch. Dist.*, 507 F.3d 1097, 1098–99 (7th Cir. 2007). The courts have thus consistently upheld school districts' authority to prohibit school employees from injecting religion into the public-school setting and to discipline employees who do so. *See Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 956 (9th Cir. 2011) (permitting school district to "order [teacher] not to use his public position as a pulpit from which to preach his own views on the role of God in our Nation's history to the captive students in his mathematics classroom"); *Borden*, 523 F.3d at 174 (school district may prohibit football coach from joining students in prayer before games, because "[t]he School District has a legitimate educational interest in avoiding Establishment Clause violations"); *Grossman*, 507 F.3d at 1100 ("[T]he plaintiff [guidance counselor] is right to concede that the [school district] could forbid her to pray with students or to urge abstinence on them in lieu of contraception as a method of avoiding pregnancy."); *Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469, 477 (2d Cir. 1999) ("Because [the school district] has a strong, perhaps compelling, interest in avoiding Establishment Clause violations, it may proscribe interactions between teachers and parents that risk giving the impression that the school endorses religion."); *Helland v. South Bend Cmty. Sch. Corp.*, 93 F.3d 327, 330 (7th Cir. 1996) (school district may terminate substitute teacher "because he defied repeated warnings against interjecting his religious beliefs into the classrooms"). Please instruct all teachers in the school system that they must not communicate religious messages to students or coerce or encourage students to pray.

*Teaching Creationism*

We are also aware of news reports that teachers in the Bossier Parish school system have promoted creationism in class and have attempted to discredit the legitimacy of the scientific theory of evolution. *See* Zack Kopplin, *The Bible v. the*

9

*Constitution*, SLATE (June 2, 2015), https://tinyurl.com/BossierCreationism. If this conduct is still occurring, please put a stop to it.

Public schools must not promote religious views on the origins of life—whether labeled as creationism, "creation science," "intelligent design," or any other euphemism. *See, e.g., Edwards*, 482 U.S. at 591 (state must not "advance the religious viewpoint that a supernatural being created humankind"); *Epperson v. Arkansas*, 393 U.S. 97, 106 (1968) (state must not prohibit teaching of evolution because "the First Amendment does not permit the State to require that teaching and learning must be tailored to the principles or prohibitions of any religious sect or dogma"); *Freiler v. Tangipahoa Parish Bd. of Educ.*, 185 F.3d 337, 348 (5th Cir. 1999) (school district must not offer disclaimer about evolution that "implies School Board approval of religious principles" and "explicitly encourages students to consider religious alternatives to evolution"); *Kitzmiller v. Dover Area Sch. Dist.*, 400 F. Supp. 2d 707, 729 (M.D. Pa. 2005) (school district must not teach intelligent design because "it's a religious alternative masquerading as a scientific theory"); *McLean v. Ark. Bd. of Educ.*, 529 F. Supp. 1255, 1264 (E.D. Ark. 1982) (state must not "introduce the Biblical version of creation into the public school curricula"). In short, public-school officials must not teach creationism or other religious explanations for the development of living things.

*Religious Displays*

Finally, we have received complaints regarding religious displays in several Bossier Parish schools. For example, we understand that Assistant Principal Melanie Watts has two large Latin crosses hanging on the walls of her office at Apollo Elementary School. Please remove these and all other religious displays from school buildings and facilities.

The courts have repeatedly invalidated displays of religious symbols or texts in the public schools. For example, in *Stone v. Graham*, 449 U.S. 39 (1980), the U.S. Supreme Court struck down a statute that called for public schools to post the Ten Commandments. The Court held that the posting of religious texts on the wall of a public school constitutes impermissible governmental promotion of a religious message. *Id*. at 40–43; *see also Washegesic v. Bloomingdale Pub. Sch.*, 33 F.3d 679, 683–84 (6th Cir. 1994) (striking down portrait of Jesus in public-school hallway); *Roberts*, 921 F.2d 1047 (striking down poster in public-school classroom asking readers to open their eyes to see hand of God); *Ahlquist v. City of Cranston*, 840 F. Supp. 2d 507, 526 (D.R.I. 2012) (requiring removal of prayer mural from public-school auditorium); *Joki v. Bd. Of Educ.*, 745 F. Supp. 823 (N.D.N.Y. 1990)

10

(requiring removal of picture of Jesus painted by student from school-auditorium wall).

It is thus unconstitutional for a public school to display a Latin cross, which is "the unmistakable symbol of Christianity." *ACLU v. City of St. Charles*, 794 F.2d 265, 267 (7th Cir. 1986). Indeed, the federal courts have consistently prohibited governmental bodies from displaying crosses on public land even outside the public-school context. *See, e.g., Trunk v. City of San Diego*, 629 F.3d 1099, 1125 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2535 (2012); *Am. Atheists, Inc. v. Davenport*, 637 F.3d 1095, 1121 (10th Cir. 2010); *Buono v. Norton*, 371 F.3d 543, 550 (9th Cir. 2007); *Separation of Church & State Comm. V. City of Eugene*, 93 F.3d 617, 620 (9th Cir. 1996); *Gonzales v. N. Twp. Of Lake Cty.*, 4 F.3d 1412, 1423 (7th Cir. 1993); *City of St. Charles*, 794 F.2d at 267, 272; *ACLU v. Rabun Cty. Chamber of Commerce*, 698 F.2d 1098, 1110–11 (11th Cir. 1983). Please remove all such displays.

\*     \*     \*

Please inform us no later than December 8, 2017, as to how the Bossier Parish School Board plans to address these violations, or we will be forced to consider further action. If you have questions, please contact Eric Rothschild at (202) 466-3234 or rothschild@au.org.

Very truly yours,

Richard B. Katskee, Legal Director
Eric Rothschild, Senior Litigation Counsel
John McGinnis, Legal Fellow
Alison Tanner, Legal Fellow\*

\* *2017 law-school graduate. Bar application pending.*

Enclosure: June 8, 2017 Letter

11